SINGER, Appellant, v. LONG, Respondent.

(222 N. W. 487.)

(File No. 6250. Opinion filed December 20, 1928.)

*P. O. Urban,* of Timber Lake, and *W. M. Potts,* of Mobridge, for Appellant.

*T. C. Gorman,* of Timber Lake, and *Morrison & Skaug,* of Mobridge, for Respondent.

CAMPBELL, J. During the farming season of 1924, by virtue of a written agreement, plaintiff was operating a certain farm owned by defendant. Whether the relations between plaintiff and defendant by virtue of said writing were technically those of landlord and tenant, or owner and cropper, or joint adventurers, it is entirely unnecessary to determine, nor is it necessary to determine whether the legal title to crops raised upon said land during the farming season of 1924 was vested in the plaintiff or in the defendant, or in plaintiff and defendant jointly or in common. It is sufficient for the purposes of this opinion to say that it is entirely clear from the terms of said writing that the beneficial interest in, and equitable ownership of, the crops raised upon said land during the farming season of 1924 rested jointly in plaintiff and defendant, an undivided one-half interest to each. The written contract between the parties said nothing at all with reference to the matter of hail insurance upon the growing crops, but the state hail insurance was in effect upon such crops for the season of 1924 as to the respective interests of both plaintiff and defendant. During the spring or early summer of 1924 defendant took out an "old line" hail insurance policy on 100 acres of growing crop upon the premises in question as additional protection over and above the state hail insurance. This policy was not introduced in evidence in the case, and its exact terms as the interests thereby covered are not disclosed, but it seems to have been issued in the name of defendant only. The premium upon this policy was $70. In July, 1924, the crops in question were destroyed by hail, and defendant received as the proceeds of said "old line" hail insurance, over and above amounts paid to both parties as proceeds of state hail in-

surance, the sum of $705, being amount of loss allowed, less premium of $70. In the spring of 1925 plaintiff instituted this action against the defendant to recover one-half of said "old line" insurance money of $705 paid to defendant as aforesaid, minus one-half of the premium thereon, or $35; the complaint being as follows:

That on or about January 18, 1924, the plaintiff and the defendant entered into a certain written contract of agreement whereby and according to the terms of which the defendant leased to the plaintiff the South Half (S½) and the Northeast Quarter (NE¼) of Section Thirty-six (36) in Township Sixteen (16) North of Range Twenty-four (24) in Dewey County, South Dakota, containing 480 acres and also agreed to deliver and did deliver to the plaintiff certain live stock and machinery then and there agreed upon; that the plaintiff and the defendant were by said agreement interested in a joint enterprise of farming and it was provided in said agreement that the plaintiff should deliver to the defendant, after the crops grown on said lands had been harvested, one-half of all the crops so grown, said share of the crop being accepted by the defendant as payment of rent, and that prior to the severance of said crop from the soil and the same were the joint property of the plaintiff and the defendant and that their interests therein were undivided.

"That on some date during the spring and summer of 1924 the plaintiff and the defendant discussed the matter of carrying Old Line Hail Insurance on their crops then growing on the premises hereinbefore described, and it was understood and agreed by and between the plaintiff and the defendant that the defendant should take out, in the name of, and for himself and the plaintiff, an insurance on certain of the crops then growing on said premises and that the defendant promised and agreed to do so; that it was further understood and agreed that each of the parties hereto should bear equally the costs and expenses of the premium to be paid for such hail insurance and that they should share equally in recovery for such loss, if any, as might be sustained during the season of 1924.

"That pursuant to their said conversation and agreement, the defendant procured and caused to be procured in his own name, as plaintiff alleges on information and belief, or in his own name and that of the plaintiff, hail insurance policies in the Automobile In-

surance Company, a corporation, and that the defendant paid the insurance premium thereon amounting to approximately $35.00.

"That thereafter hail insurance losses were sustained on the crops covered by the said insurance policy procured by the defendant; that the said policy was in the defendant's possession and that the defendant made and procured an adjustment of the said loss and received for himself and for the plaintiff, and for their mutual account, the sum of $405.00 on or about July 29, 1924, and the further sum of $300.00 on or about August 16, 1924, and that said sums were paid to the defendant by the Automobile Insurance Company; that the plaintiff has heretofore demanded of the defendant an accounting and the deliverance to this plaintiff of one-half of the sum received less the sum of $35.00 which should properly be charged to the plaintiff as his share of the cost of the premium for said insurance, but that the defendant has wholly failed and refused to deliver said sum or any sum whatsoever to the plaintiff, and that the plaintiff is entitled therefore to recover of the defendant the one-half of $705.00 or $352.50, less the sum of $35.00 being plaintiff's share to pay for the cost of procuring such insurance.

"Wherefore, plaintiff prays judgment against the defendant for the sum of $317.50 and interest thereon at 7 per cent per annum from August 16, 1924, together with the costs and disbursements of this action."

At the trial plaintiff testified, in substance, that he had a talk with defendant on the farm when they were looking at the 100 acres of crop which defendant subsequently covered by the "old line" insurance, in which conversation plaintiff said he would like to put some more hail insurance on his share, and defendant replied that he wanted to do the same thing; that plaintiff inquired when it should be done, and defendant replied the sooner the better, and, looking at his watch, said it was too late on that day, and inquired when plaintiff would be in town, to which plaintiff replied that he would come in the next day after dinner. Plaintiff further said that the next day after dinner he had started his car, and was just leaving for town, when defendant again appeared at the farm; that defendant thereupon told plaintiff it would be unnecessary for him to go to town; and that there was much work to be done by plaintiff on the farm; and that he (defendant) had fixed up the in-

surance policy covering both their interests in said crop, and said, "I put in 100 acres for your share and my share and it is not necessary for you to go in"; that plaintiff thereupon inquired, "I can depend on that?" The defendant replied, "Yes, sure. That is all we can put on." That plaintiff inquired as to the amount of premium for said hail insurance, which defendant said he had placed for the protection of their joint interests, and was told that it was $70; and that he thereupon wrote a check for $35, and handed it to defendant, but that defendant returned it, saying, in substance, that he knew plaintiff was "hard up," and further that he had paid the total premium himself by giving to the insurance agent his note therefor, which was not due until October 1st thereafter, and bore no interest; and also that he (defendant) was then indebted to plaintiff for breaking some ground for flax, and that he would take out this half of the premium when they settled up for the breaking. Plaintiff testified that he relied on defendant's statement that such "old line" insurance had been taken out for their mutual protection, and made no further effort thereafter to do anything about the matter of protecting his interest in the crop over and above the state hail insurance.

The crop was damaged by hail on two occasions and adjustment made thereafter, and plaintiff testified that he subsequently inquired of defendant when the money would be coming from the "old line" company, and defendant replied that the company had been hit pretty hard, and would not pay anything before October 1st; that later he again inquired from the defendant, with reference to the matter, and defendant said it had not been paid, whereupon plaintiff said that was peculiar, as other neighbors insured in the same company had received their money, whereupon the defendant admitted that he had received the proceeds of such insurance, and stated that he was "hard up," and had used the same to save some of his property from foreclosure, but said, "I will pay you as soon as we get the money from the crop. I will pay you every cent I owe you." But that later, and in January, 1925, defendant for the first time refused to pay plaintiff any part of the proceeds of such "old line" insurance, and stated, in substance, that he (plaintiff) had made money enough on the place and with reference to this insurance money, "I will never let you have a cent." And shortly thereafter this action was instituted.

Defendant admitted taking out the "old line" hail insurance, but denied any such conversations as plaintiff claimed regarding such matter, and testified, in substance, that he never had any agreement with plaintiff regarding such additional "old line" insurance, but simply took it out of his own motion and entirely as a matter of protecting his own interest, and that it did not cover, and he never intended it to cover, anything beyond his own undivided interest in the 100 acres of crop in question.

The matter was tried to the court with a jury, who apparently believed plaintiff's version of the facts, and returned a general verdict in favor of the plaintiff for $345, upon which judgment was entered. Thereafter, and upon motion of the defendant, the learned trial judge vacated the judgment so entered in plaintiff's favor upon the general verdict and entered judgment non obstante in favor of defendant, dismissing the action and awarding defendant his costs, from which judgment and from a denial of his application for a new trial the plaintiff has appealed.

It seems to be the theory of respondent upon this appeal (apparently adopted by the learned trial judge when he granted the motion for judgment non obstante) first, that the evidence does not show any promise upon the part of respondent to take out any insurance for appellant upon appellant's interest in the crop in question; second, that if respondent made any such promise it was without consideration and not legally enforcible; and third, that any oral agreement between the parties with reference to the matter of hail insurance would be a parol contradiction of the written lease.

It is perhaps true in strictness that the complaint alleges a promise by respondent to take out insurance for the protection of the joint interests of appellant and respondent, whereas the evidence of appellant seems to indicate that the parties agreed to go together and take out insurance upon their joint interests, and that, just as appellant was about to depart for town, pursuant to their agreement, respondent, without having previously promised to look after the matter himself, appeared and stated the fact to be that he had taken care of the matter, and had insured their joint interests, by reason of which it would be unnecessary for them to go together and attend to the matter as they had previously contemplated, and appellant, relying upon such representations, took no further steps in the matter himself. This was the tendency of the

proof offered, but no question was raised upon the pleadings in the court below, nor does any objection appear to have been made that the testimony offered did not correspond to the issues as framed by the pleadings, and under such circumstances we should not here be overtechnical in that respect.

The written contract between the parties did not purport to deal in anywise with the matter of hail insurance, and subsequent parol dealings of the parties with reference thereto were entirely permissible. Neither is there here involved any question of a naked promise by respondent, unsupported by any consideration, to insure appellant's interest in the crop and a subsequent breach of such promise. If respondent had taken out no insurance whatever after promising to insure the joint interests of the parties in this crop, a different situation might be presented. In the instant case, however, the jury by their verdict indicated their acceptance of appellant's version of the facts, and the evidence of appellant, if believed by the jury, was ample support for that verdict. Assuming the truth of appellant's testimony, which the jury might perfectly well believe, and which their verdict indicated they did believe, the facts are that appellant and respondent were jointly interested in the crop in question, and hence owed to each other duties of good faith in their dealings with respect to it. Respondent, knowing that appellant desired further protection of his interest, stated that he (respondent) also desired further protection, and arranged that the two should meet and attend to securing such protection. Thereupon respondent took out insurance which by its terms protected his interest only. He then returned to appellant, and advised appellant that he had taken out the insurance, and that such insurance protected both the interest of respondent and the interest of appellant as fully as such interests could be protected, whereupon appellant, relying on such representations as respondent knew he did rely, abandoned his own efforts to further insure his own interest. Loss occurred, and the insurance money was paid to respondent. There is here involved no question of promise or of consideration. The situation is simply this: Under such circumstances as appear in this case, respondent in fact having the insurance and having received the proceeds thereof, equity will not permit respondent to be heard to say, to the damage of appellant, that he held such insurance in any other manner than the manner in

which he represented to appellant that he had taken and held the same, to wit, for the equal protection of the joint interests of both parties.

It is not material whether respondent previously made a valid and binding promise to take out insurance for the protection of the joint interests of the parties, nor is it material whether respondent was ever under any obligation so to do. He did in fact take out insurance on the property in question, and by the verdict of the jury, it is established that he did thereafter represent to appellant, who was jointly interested in the property with him and to whom he owed a duty of good faith, that this insurance protected the interests of both. Respondent knew that appellant was himself about to protect his own interest, which project he abandoned in reliance upon the representations of respondent that he (respondent) had already fully protected appellant's interest by the insurance taken out. Having now received the money upon such insurance, he must account for it in accordance with the basis upon which he represented to appellant that he had procured and held it.

The case is not in any strict sense a proceeding for damages for fraud or false representation. It is a case where, if the facts are as stated by appellant and as the jury found them to be, appellant is entitled under the circumstances to proceed against the respondent in the same manner in which he would have been entitled to proceed if respondent in fact took and held the insurance policy in such manner as he represented to appellant that he did hold it, and respondent will not be heard to say under the circumstances of this case that he took or held it otherwise.

The judgment and order appealed from are reversed, and the cause is remanded, with directions to reinstate the judgment, previously vacated, upon the general verdict in favor of appellant for his damages and costs.

BURCH, P. J., and POLLEY, SHERWOOD, and BROWN, JJ., concur.